IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN THE MATTER OF THE SEARCH OF **A black Apple iPhone cell phone,** CURRENTLY LOCATED AT **Drug Enforcement Administration Office at 111 Greencourt Rd. Henrico, VA 23228**

Case No. 3:22-sw-183

FILED
Oct 24 2022
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, **Steven A. Scully** being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with United States Postal Service, Office of Inspector General (USPS OIG), currently assigned to the Drug Enforcement Administration (DEA) and have been a Federal Agent since June 2012.  Upon becoming a Special Agent I completed twelve weeks of training at the Federal Law Enforcement Training Center in Glynco, Georgia.  The training covered various aspects of federal law enforcement including the investigation of narcotics-related offenses.  I have received instruction on conducting investigations and participated in investigations involving possession with intent to distribute and distribution of controlled substances.  I have participated in multiple interdictions, controlled deliveries, seizures, and search warrants, which have resulted in criminal arrests and prosecutions. I have participated in the application for and execution of multiple arrest and search warrants in the investigation of several

narcotics and organized crime-related offenses resulting in the prosecution and conviction of individuals and the seizure of illegal drugs, weapons, stolen property, United States currency, and other evidence of criminal activity.  Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled dangerous substances.  I have become familiar with the manner in which individuals and groups organize to conduct their operations, as well as means generally employed to avoid detection by law enforcement.  At my current assignment with the DEA I am involved in investigations that focus on an illegal drug trafficking organization operating in the metro-Richmond area.

3.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4.      The property to be searched is a black Apple iPhone cell phone, hereinafter the "Device."  The Device is currently located at Drug Enforcement Administration Office at 111 Greencourt Rd Henrico, VA 23228.  The Device is more fully described in Attachment A.

5.      The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## TECHNICAL TERMS

6.      Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. **Wireless telephone**:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication

2

through radio signals.   These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.   Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  **Digital camera**:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  **Portable media player**:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital

data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. **GPS**:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.   Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. **PDA**:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually

include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  **IP Address**: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g.  **Internet**: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

7.      Based on my training, experience, and research, **[[**and from consulting the manufacturer's advertisements and product technical specifications available online at www.apple.com I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## PROBABLE CAUSE

8.      The USPS OIG, DEA and Henrico Co. police are conducting an investigation into the drug distribution activities of Chesley WILLIAMS, and others regarding possible violations of 21 U.S.C. 846 and 841(a)(1), conspiracy to possess with intent to distribute and distribute controlled substances, and possession with intent to distribute controlled substances. As part of that investigation, I have established probable cause that the device described in Attachment A contains evidence, contraband, fruits, and/or instrumentalities of these criminal activities, as described in Attachment B.

9.      The target of the investigation, WILLIAMS, has prior drug trafficking convictions, to include a 2011 federal conviction for possession with the intent to distribute and distribution of crack/cocaine. WILLIAMS was released from federal prison in 2018.

10.     On September 16, 2022, a Confidential Informant notified law enforcement that that they knew WILLIAMS to traffic a large amount of narcotics in the Greater Richmond area, most specifically fentanyl. The Confidential Informant placed a recorded phone call to WILLIAMS and asked to purchase fentanyl. WILLIAMS notified the Confidential Informant that he had fentanyl available and could get the Confidential Informant as much as was needed. The

Confidential Informant notified WILLIAMS that they would like to purchase approximately 16 ounces of fentanyl or a half a kilogram. WILLIAMS stated the price for a half a kilogram would be $25,000. The Confidential Informant agreed to the price and instructed WILLIAMS to come to 7519 Staples Mill Rd., Henrico, VA 23228, hereinafter referred to as "the AMTRAK parking lot." The Confidential Informant notified WILLIAMS that they would have the money.

11.     At approximately 6:15 p.m. WILLIAMS arrived at the AMTRAK parking lot. WILLIAMS was driving a black Nissan Sentra, later identified as a rental vehicle. WILLIAMS and the Confidential Informant talked briefly. At approximately 6:22 p.m., the Confidential Informant sent your Affiant a text message that read "here." Your affiant, through his training and experience took this to mean that the approximately half a kilogram of fentanyl was located inside the vehicle driven by WILLIAMS to the AMTRAK parking lot.

12.     A few minutes later, the Confidential Informant retrieved a bag from the rear of their vehicle. This bag was filled with printer paper and was meant to act as the bag containing money for the half a kilogram of fentanyl. The Confidential Informant placed the bag inside WILLIAMS's vehicle and retrieved a black handbag from WILLIAMS's vehicle. Once this transaction took place, WILLIAMS was arrested.

13.     Inside the black handbag that was retrieved by the Confidential Informant from WILLIAMS's vehicle was a clear, vacuum-sealed bag containing a mixed dark and light powder. The powder was field tested, and the results showed that it contained fentanyl. Additionally, the Confidential Informant notified law enforcement to additional fentanyl located in the driver side door of WILLIAMS's vehicle. With that information, law enforcement looked from the outside of the vehicle into the driver side door and identified a clear vacuum sealed bag that contained the

7

same looking powder that was found in the black handbag. Law enforcement seized the vacuum

sealed bag, field tested the material, and the results showed that it also contained fentanyl.

14.     Inside the vehicle located on the driver's seat was a bank card with the name

Chesley WILLIAMS on it. On the passenger's seat was the Device. Law enforcement contacted

Enterprise Rent-A-Car and was notified that the black Nissan Sentra driven to the scene by

WILLIAMS was rented by WILLIAMS. No other individuals were located inside the black Nissan

Sentra during the transaction.

15.     The Device is currently in the lawful possession of the DEA.  It came into the

DEA's possession in the following way:  The device was seized during the buy/bust of

WILLIAMS and the search of his vehicle.

16.     The Device is currently in storage at 111 Greencourt Rd. Henrico, VA 23228.  In

my training and experience, I know that the Device has been stored in a manner in which its

contents are, to the extent material to this investigation, in substantially the same state as they were

when the Device first came into the possession of the DEA.

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

17.     Based on my knowledge, training, and experience, I know that electronic devices

can store information for long periods of time.  Similarly, things that have been viewed via the

Internet are typically stored for some period of time on the device.  This information can sometimes

be recovered with forensics tools.

18.     *Forensic evidence.*  As further described in Attachment B, this application seeks

permission to locate not only electronically stored information that might serve as direct evidence

of the crimes described on the warrant, but also forensic evidence that establishes how the Device

8

was used, the purpose of its use, who used it, and when.  There is probable cause to believe that

this forensic electronic evidence might be on the Device because:

a.  Data on the storage medium can provide evidence of a file that was once on the

storage medium but has since been deleted or edited, or of a deleted portion of a

file (such as a paragraph that has been deleted from a word processing file).

Forensic evidence on a device can also indicate who has used or controlled the

device.  This "user attribution" evidence is analogous to the search for "indicia of

occupancy" while executing a search warrant at a residence.

b.  A person with appropriate familiarity with how an electronic device works may,

after examining this forensic evidence in its proper context, be able to draw

conclusions about how electronic devices were used, the purpose of their use, who

used them, and when.

c.  The process of identifying the exact electronically stored information on a storage

medium that are necessary to draw an accurate conclusion is a dynamic process.

Electronic evidence is not always data that can be merely reviewed by a review

team and passed along to investigators.  Whether data stored on a computer is

evidence may depend on other information stored on the computer and the

application of knowledge about how a computer behaves.  Therefore, contextual

information necessary to understand other evidence also falls within the scope of

the warrant.

d.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

e.  I know that when an individual uses an electronic device to the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

19.  *Nature of examination.*   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

20.  *Manner of execution.*   Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

21.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Steven A. Scully
Special Agent
U.S. Postal Service
Office of Inspector General

Subscribed and sworn to before me by
telephone on October 24, 2022:

_____ /s/ MRC

Mark R. Colombell
United States Magistrate Judge

11

## ATTACHMENT A

22.     The property to be searched is a black Apple iPhone cell phone, hereinafter the "Device."  The Device is currently located at Drug Enforcement Administration Office at 111 Greencourt Rd Henrico, VA 23228.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

1.      All records on the Device described in Attachment A that relate to violations of 21

U.S.C. 846 AND 841(a)(1), conspiracy to possess with intent to distribute and distribute controlled

substances, and possession with intent to distribute controlled substances and involve **Chesley**

**Williams** including:

   a.   lists of customers and related identifying information;

   b.   types, amounts, and prices of drugs trafficked as well as dates, places, and

        amounts of specific transactions;

   c.   any information related to sources of drugs (including names, addresses, phone

        numbers, or any other identifying information);

   d.   any information recording **Chesley Williams** schedule or travel from **September**

        **1, 2022** to the present;

   e.   all bank records, checks, credit card bills, account information, and other financial

        records.

2.      Evidence of user attribution showing who used or owned the Device at the time

the things described in this warrant were created, edited, or deleted, such as logs, phonebooks,

saved usernames and passwords, documents, and browsing history;

3.      Records evidencing the use of the Internet Protocol addresses to communicate

with other co-sonspirators including:

   a.   records of Internet Protocol addresses used;

b.   records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2